IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                Case No. 21-cr-1886 KG

LEOBARDO HERNANDEZ-AGUSTIN,

    Defendant.

MEMORANDUM OPINION

    This matter is before the Court on Defendant Leobardo Hernandez-Agustin's Amended Motion to Dismiss the Indictment with Prejudice. (Doc. 24). This Memorandum Opinion follows a separate Order in which this Court denied the Motion. (Doc. 45).

    Mr. Hernandez-Agustin is charged with felony reentry of a removed alien. (Doc. 12). In his Motion to Dismiss, Mr. Hernandez-Agustin makes a collateral attack on his previous deportation, arguing that it was fundamentally unfair because he does not speak Spanish and therefore could not understand it, was not properly notified of his rights, did not properly waive those rights, and was deprived of the opportunity for judicial review and to exhaust administrative remedy. *See generally* (Doc. 24). By law, if the predicate removal was invalid, the Government cannot prove a necessary element of felony reentry—namely that the alien *re-entered* after a prior removal. *E.g.*, *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1619 (2021). Specifically, the question presented by the Motion is whether Mr. Hernandez-Agustin is a monolingual Indigenous Mixteco speaker or whether he understands Spanish. The Court finds, based on the weight of the credible evidence, that Mr. Hernandez-Agustin comprehended

1

Spanish sufficiently to understand his previous removal and to knowingly and intelligently waive his rights. Thus, the Motion is denied.

I.   *Background*

   A.  *Procedural Background*

The United States timely responded to the Motion to Dismiss. (Doc. 22). The Court conducted in-person hearings at which it heard evidence on February 24, 2022, and March 4, 2022. (Docs. 37 and 44). Assistant United States Attorney Matthew Ramirez represented the Government. Assistant Federal Public Defender Danielle Phillips represented Mr. Hernandez-Agustin, who was present.

The following witnesses testified on behalf of the United States:

- Homeland Security Investigations Special Agent Sergio Guerra testified about interviewing Mr. Hernandez-Agustin during his predicate arrest, in Amarillo, Texas, in October 2017;

- Immigration and Customs Enforcement Deportation Officer Lorenzo Lazcano testified about conducting Administrative Removal Interviews with Mr. Hernandez-Agustin in May and June 2018 as part of his predicate administrative removal procedure near Lubbock, Texas;

- United States Border Patrol Agent Michael Schottmuller testified about encountering and arresting Mr. Hernandez-Agustin near Lordsburg, New Mexico on December 4, 2021;

- United States Border Patrol Agent Jose Ortega testified about intaking Mr. Hernandez-Agustin at the Lordsburg Border Patrol Station on December 4, 2021; and

- United States Border Patrol Agent Arturo Munoz testified about intaking Mr. Hernandez-Agustin at the Lordsburg Border Patrol Station on December 4, 2021.

And the following witnesses testified on behalf of Ms. Hernandez-Agustin:

- Arcenio Lopez, Executive Director of the Mixteca Indigena Community Organizing Project in Oxnard, California, testified to his experience interviewing Mr. Hernandez-Agustin; and

- Mr. Hernandez-Agustin testified on his own behalf.

The Court notes that it twice declined to certify Arcenio Lopez as an expert in this case, first orally at the February 24 hearing, and second in an order denying Mr. Hernandez-Agustin's subsequent written Motion to Appoint Expert Arcenio Lopez. *See* (Docs. 37, 38, 39). The Court first excluded Mr. Lopez entirely, reasoning that testimony about Mixteco language and culture generally was irrelevant, and to the extent it might be relevant, it was not probative of Mr. Hernandez-Agustin's Spanish language proficiency or credibility. (Doc. 37); (Doc. 39) at 2. The Court next ruled that Mr. Lopez may not testify as an expert in language proficiency for lack of qualifications and reliable methods. (Doc. 39) at 4. The Court nonetheless concluded he may testify as a lay witness to the extent he developed personal perceptions of Mr. Hernandez-Agustin's language skills based on his interactions with the Defendant. *Id.* Even so, the Court reiterated that testimony by Mr. Lopez about Mixteco culture was excluded. *Id.* at 5. For these reasons, the Court considers Mr. Lopez's testimony only to the extent it relates to his personal perceptions of his conversations with Mr. Hernandez-Agustin.

B. *Legal Background*

A prior removal order enjoys a presumption of regularity which a defendant must overcome by meeting 8 U.S.C. § 1326(d)'s three requirements. *United States v. Adame-Orozco*,

607 F.3d 647, 651 (10th Cir. 2010). To bring collateral attacks against predicate removal orders, defendants must demonstrate that (1) they "exhausted any administrative remedies that may have been available to seek relief against the order," (2) the removal proceedings "improperly deprived [them] of the opportunity for judicial review," and (3) "entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The defendant has the burden of making § 1326(d)'s three-part showing by a preponderance of the evidence. *United States v. Gonzalez-Fierro*, 949 F.3d 512, 521 n.7 (10th Cir. 2020).

Generally, a defendant may knowingly waive their rights in a removal proceeding, and any such waiver is dispositive of the required exhaustion of administrative remedies. *See, e.g., United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) ("An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1).").

Mr. Hernandez-Agustin argues essentially that his lack of Spanish-language proficiency meant that he did not understand his first removal and therefore he did not knowingly waive any of his rights related to that removal, including his right to administrative review and right to counsel. (Doc. 24) at 4. Specifically, his argument is that he (1) could not have knowingly waived his right to administrative remedies (and therefore, that his failure to exhaust should be excused), and (2) was deprived of his right to judicial review, which (3) rendered his removal fundamentally unfair. *See* (Doc. 24) at 13-21.

The Government argues the exact opposite, that Mr. Hernandez-Agustin's claim that he did not speak Spanish proficiently in 2018 lacks credibility and that he validly waived his rights to administrative remedies and judicial review. *See generally* (Doc. 22). The crux of the

4

Motion, therefore, is the factual question whether Mr. Hernandez-Agustin understood Spanish sufficiently in 2018 to understand his removal and waive his rights knowingly and voluntarily.

II.   *Findings of Fact*

The Court, based on the witness testimony and the evidence submitted, finds that Mr. Hernandez-Agustin spoke and understood Spanish sufficiently to knowingly waive his rights during his 2018 administrative removal proceeding. The Court makes the following specific factual findings.

During a post-*Miranda* interview with Homeland Security Investigations Special Agent Sergio Guerra in October 2017 in Amarillo, Texas, Mr. Hernandez-Agustin answered questions in Spanish, using extended answers to reply to open-ended questions. Transcript of February 24, 2022, Motion Hearing at 39:7–17; 41:20–42:1; 43:22–44:1.[1] Mr. Hernandez-Agustin used full sentences and both present and past tenses in Spanish. Feb. 24 Tr. at 41:10–13. Mr. Hernandez-Agustin acknowledged his *Miranda* rights in Spanish, at times asking for clarification in Spanish and re-stating his rights in his own words in Spanish. Feb. 24 Tr. at 38:4–39:4. Mr. Hernandez-Agustin waived his *Miranda* rights orally in Spanish. Feb. 24 Tr. 39:3–4. Though Mr. Hernandez-Agustin expressed that he did not feel proficient in Spanish and that Mixteco was his first language, Feb. 24 Tr. at 45:10–13; Def's Exh. 1, he never requested a Mixteco interpreter nor reported that he could not understand his Spanish conversations with government agents, Feb. 24 Tr. 42:2–15. In the end, Agent Guerra had "no doubts" that Mr. Hernandez-Agustin spoke Spanish. Feb. 24 Tr. at 51:4–6.

---

[1] The Court's citations to the hearing transcripts refer to the court reporter's original, unedited versions. Any final transcript may contain some differences in page and line numbers.

In May and June 2018 Immigration and Customs Enforcement Deportation Officer Lorenzo Lazcano conducted administrative removal interviews with Mr. Hernandez-Agustin. Officer Lazcano worked out of Lubbock, Texas, and conducted the interviews at Dalby Correctional Facility in Post, Texas. Feb. 24 Tr. at 58:12; Government's Exh. 2. The interviews were conducted in Spanish after Officer Lazcano asked Mr. Hernandez-Agustin the best language with which to proceed. Feb. 24 Tr. at 60:1–7. According to records, Mr. Hernandez-Agustin answered every question in Spanish. Feb. 24 Tr. at 60:1–7. Those questions required more than simple yes-or-no answers and included things like date of birth, where he was from, whether he had been removed previously, pending applications, his mother's and father's names, etc. Feb. 24 Tr. at 86:20–87:1. Mr. Hernandez-Agustin did not report that he could not understand the interaction. Feb. 24 Tr. at 68:24–69:1. Nor did he request an interpreter. Feb. 24 at 65:10–15; 84:2–11. Officer Lazcano determined, based on their conversation, that Mr. Hernandez-Agustin "spoke proficient Spanish." Feb. 24 Tr. at 86:8–11.

Mr. Hernandez-Agustin initialed every page of and signed his I-877, "Record of Sworn Statement," form. Feb. 24 Tr. at 61:23; 62:12–13; Government's Exh. 1. Mr. Hernandez-Agustin also signed his I-851, which was explained to him in Spanish, indicating that he admitted the allegations and that he was not contesting or requesting withholding of removal. Feb. 24 Tr. at 67:11–17; Government's Exh. 2. Mr. Lazcano also gave Mr. Hernandez-Agustin a copy of his I-94, which notifies an alien that they are being removed. Feb. 24 Tr. 71:7-8; Def's Exh. 10. That document explained that Mr. Hernandez-Agustin had 14 days to appeal, and that was explained to him in Spanish. Feb. 24 Tr. at 79:18–80:3. Mr. Hernandez-Agustin did not contest his removal proceedings. Feb. 24 Tr. at 80:4–12.

Later, in 2021, when Mr. Hernandez-Agustin re-entered the United States, he complied with Spanish-language commands given by Border Patrol agents when he was encountered as a walking border crosser near Lordsburg, New Mexico. Feb. 24 Tr. at 96–97. During his processing, or intake, after his arrest, Mr. Hernandez-Agustin answered questions in Spanish. Feb. 24 Tr. at 109:21–110:4. He acknowledged his rights as they were read to him in Spanish. Feb. 24 Tr. at 121:16–122:3. He also told the Border Patrol agent he wanted a lawyer, in Spanish. Feb. 24 Tr. at 111:7–13. Mr. Hernandez-Agustin additionally asked what was going to happen to him, again in Spanish. Feb. 24 Tr. at 111:16–17; 123:15–18. He did not speak in Mixteco, ask for translation, or indicate he did not understand the conversation. Feb. 24 Tr. at 112:1–10. The agents asked him if he would like to contact his consulate, which he declined, and if he had a fear of persecution if he returned to Mexico, which he denied. Feb. 24 Tr. at 122:22–25.

The Court acknowledges being presented conflicting testimony. Mr. Hernandez-Agustin testified that he is illiterate in any language, March 4, 2022, Hearing Transcript at 45:17–22, that no one read his charging documents to him, *id.* at 47:18–20, that he did not understand his substantive rights, *id.* at 47–51, and that he understands "no part of the Spanish or English Language," *id.* at 76:12–15 (referencing (Doc. 18-7) at ¶ 5). And Mr. Hernandez-Agustin's witness, Arcenio Lopez, testified that "it's pretty clear that I was interacting with someone who is a Mixteco monolingual speaker," and that Mr. Hernandez-Agustin did not understand his substantive rights when asked about them. March 4 Tr. at 24:6–8 and 25–27. Despite this contradictory testimony, the Court arrives at its findings for the following reasons.

First, the Court finds the Government witnesses credible and reliable. The Court notes that it weighs the testimony of the agents who interacted with Mr. Hernandez-Agustin in 2021

less than the officials who interacted with him in 2018 because the operative question is whether Mr. Hernandez-Agustin understood Spanish in 2018. Nonetheless, the officials' testimony was largely consistent despite working in different agencies in different locations across different times. The Court, therefore, credits the Government witnesses' testimony.

Second, the Court finds Mr. Hernandez-Agustin less credible because of his interest in the outcome and the inconsistencies in his testimony. The Court acknowledges that Mr. Hernandez-Agustin testified that he assumed he would be deported no matter the outcome of the hearing, implying that he therefore lacked motivation to prove he cannot understand Spanish. March 4 Tr. at 59:4–7. The Court disagrees. The outcome of the hearing would determine whether he faces criminal liability and prison time for his re-entry. He also testified that he wants to be able to return to the United States and remain here. March 4 Tr. at 58:4–22. Given that desire, the Court finds he has a very vested interest in the outcome.

The Court also finds Mr. Hernandez-Agustin's testimony inconsistent. He at times said he spoke no Spanish and, later, admitted to speaking "broken Spanish." March 4 Tr. at 55:18. He also testified that with the agents in 2018 he understood questions like "have you been arrested before?" March 4 Tr. at 66:6–8. And he stated he was able to answer some of their questions. *E.g.*, March 4 Tr. at 49:23–25; 67:7–15; 73:23–74:1. Because they are statements against his own interest, the Court credits Mr. Hernandez-Agustin's statement that he does, indeed, speak at least broken Spanish and his admission that he understood and answered at least some of the agents' questions in 2018.

Third, the Court finds Mr. Lopez's testimony less reliable than the Government witnesses' testimony. While the Court finds Mr. Lopez credible, it finds that his testimony about interacting with Mr. Hernandez-Agustin suffers from a lack of reliability for the same reasons

Mr. Hernandez-Agustin's direct testimony suffers—namely, that Mr. Hernandez-Agustin has a motivation to prove he does not understand Spanish. Furthermore, proving a negative is difficult even in the best of circumstances. Here, the Court is not persuaded by the methods used to assess Mr. Hernandez-Agustin's (lack of) Spanish skills, which seem to be asking him questions in Spanish and allowing him to answer in Mixteco. *See generally*, March 4 Tr. at 19–25. Finally, the Court notes that Mr. Lopez testified that he did not know Mr. Hernandez-Agustin before this case and he was not aware that Mr. Hernandez-Agustin had given statements to federal agents in Spanish when Mr. Lopez drew his conclusions. March 4 Tr. at 28:20-24; 31–36. The Court, therefore, accords reduced weight to Mr. Lopez's testimony.

Furthermore, Mr. Lopez's testimony was mixed on the question of Mr. Hernandez-Augustin's Spanish proficiency. Mr. Lopez testified that Mr. Hernandez-Agustin was, in his opinion, a monolingual Mixteco speaker, but he also testified that Mr. Hernandez-Agustin "has some basic Spanish." March 4 Tr. at 24:6–8. Mr. Lopez testified that Mr. Hernandez-Agustin was more comfortable speaking in Mixteco, but also that he never requested to only conduct the conversation in Mixteco. March 4 Tr. at 21:1–7.

In conclusion, the evidence suggests Mr. Hernandez-Agustin prefers Mixteco to Spanish and may not be fully fluent in Spanish. Nonetheless, the evidence, which this Court finds credible, is that Mr. Hernandez-Agustin understood and spoke Spanish sufficiently to understand the removal procedure and to knowingly waive his rights during his prior removal in 2018. Thus, the Motion is denied.

*III.   Conclusions of Law*

Because the Court finds that Mr. Hernandez-Agustin spoke Spanish proficiently, the Court concludes that he does not meet his burden of persuasion on the three § 1326(d)

requirements. Specifically, his use of Spanish indicates he validly waived his right to administrative review and therefore failed to exhaust administrative remedies, and cannot now bring a collateral attack against his predicate removal.

For these reasons, Mr. Hernandez-Agustin's Motion to Dismiss (Doc. 24) is denied.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE